The plaintiff, Mitchell T. Burrell, appeals from a judgment in favor of the defendants, Carraway Methodist Hospital of Alabama, Inc. (the "hospital"), and nine of its officers, directors, or employees.
Burrell, an employee of the hospital, was dismissed from his employment as a construction foreman in 1988; the dismissal was related to his private work for a superior on hospital time. Burrell sued because of the dismissal.
Although Burrell's position related to the maintenance of hospital properties, the record indicates that Burrell and persons in similar positions were sometimes called upon to perform private work on hospital time and, in doing so, to use hospital materials or equipment for persons affiliated with the hospital.
About Burrell and this practice, Will Wakefield, a former president and CEO of Carraway Management Foundation and former associate administrator of the hospital, testified by affidavit:
 "I am familiar with . . . Burrell. I worked in the same hospital with [him] and was familiar with that department [maintenance] and his personal work performance from the time he began working [in] 1976 until my retirement in February of 1987. Mitchell Burrell was a good employee who was known for his exceptional work in the maintenance department. It was general knowledge that if an administrator needed some personal work done and wanted it to be high quality, he would get Mitchell Burrell to do it.
 "It was also a custom and practice at Carraway . . . to have workmen in the maintenance department do private work for the administrators and board members from time to time. This was generally accepted practice and the hospital would be reimbursed through an accounts receivable procedure where they would be billed by the hospital. This was a practice which I always felt was a potential problem for abuse by the board and administrators but when I objected to the practice, I was overruled by Dr. Ben Carraway.
 "The employees in the maintenance department relied on their supervisors and administration to inform them of policies that might affect their employment. The policy regarding reimbursement to the hospital for private work done for administrators and board members . . . was not a uniform policy. Some projects would be fully billed while others were not. . . . [E]mployees . . . were told, on many occasions, to refrain from billing parts of their work. . . .
 ". . . [I]t was not part of [Burrell's] job to know how or if said work was billed to said board members or administrators. In other words, Mitchell Burrell was not responsible for knowing the hospital reimbursement arrangement at the accounts receivable level. . . . [E]mployees were not informed of the reimbursement arrangements. . . .
 "Howard Tyra . . . was entitled to use the hospital reimbursement policy described above. He was Mitchell Burrell's boss."
The events leading up to Burrell's termination relate to his boss, Howard Tyra.[1] *Page 195 
The record indicates that Tyra instructed Burrell to work on private projects for him on hospital time, using hospital equipment and materials, and that Burrell did so. Burrell indicated in his deposition that, as was often his practice in such instances, he listed this time on his hospital time records as "administrative" time for the hospital. According to Burrell, he and other employees of the maintenance department were expressly encouraged by Tyra to either underreport or fail to report the labor or materials cost on a private job. Burrell testified that doing so was common practice among the maintenance workers, who, the record reflects, were generally doing the private work for persons in positions of considerable authority with the hospital.[2]
Sometime after working on Tyra's projects, Burrell says, he was advised by hospital administrator James Hallmark that his services were no longer needed. Burrell stated in his deposition that he was told by the hospital's general counsel, Ann Sorge, specifically that he was "fired for stealing time, materials and [the use of] equipment for Howard Tyra." According to Burrell, he later learned that Tyra, too, had been dismissed.
The record indicates that Burrell was both confused and angered by his termination, which he said was directed toward activities he was ordered to engage in by a superior.
Burrell sued the hospital and nine of its employees, officers, or directors, both as individuals and in their capacities as representatives of the hospital, alleging fraud, based on the claim that he was directed and encouraged to engage in certain activities and then was fired for doing so. Burrell twice amended his complaint to add claims of promissory estoppel and breach of an oral contract, alleging that the hospital had represented by its practice that Burrell could be terminated only for cause, and that he had, in fact, been terminated for following a superior's directives.
The defendants moved for, and were given, a summary judgment as to all of Burrell's claims.
A summary judgment is appropriate where there "is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Ala.R.Civ.P. 56(c). The movant has the burden of establishing the nonexistence of a material fact. Berner v. Caldwell, 543 So.2d 686 (Ala. 1989). Once the movant has made a prima facie showing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to rebut that prima facie showing. Id. This Court, in determining whether there was a genuine issue of material fact, must review the evidence in a light most favorable to the nonmovant. Kizziah v. Golden Rule Ins.Co., 536 So.2d 943 (Ala. 1988).
In the present case, there are disputed issues of fact. However, even if the factfinder resolves every question of fact in favor of Burrell, he could not recover against the hospital and the nine other defendants as representatives of the hospital. Here, there were no genuine issues ofmaterial fact and the defendants were entitled to a judgment as a matter of law.
Burrell presented no evidence that this purported oral contract with the hospital, which he says limited its right of termination to good cause, was anything more than a general, de facto policy. Before there can be an agreement such as that alleged by Burrell, there must be an offer. In the context of offers created by policies stated in employee handbooks, we have said that, "to become a binding promise," the representation must be more than a "mere general statement of policy." Hoffman-La Roche, Inc. v.Campbell, 512 So.2d 725, 734 (Ala. 1987). Such a representation of policy must be "specific enough to constitute an offer." Stinson v. American Sterilizer Co.,570 So.2d 618, 621 (Ala. 1990). A mere expectation cannot be the basis of such a contract. McCluskey v. Unicare HealthFacility, Inc., *Page 196 484 So.2d 398 (Ala. 1986). Here, Burrell presented no evidence of any representation that he would be terminated only for "good cause."[3] He points only to the general behavior of the hospital. Burrell's claim of a breach of an oral contact is based on a mere expectation and thus must fail.
Burrell also argues that the hospital was equitably estopped from terminating him.
In Bates v. Jim Walter Resources, Inc.,418 So.2d 903 (Ala. 1982), we examined an oral understanding between the parties that the defendant would hire the plaintiff. Before the plaintiff began work, the defendant changed its mind about employing the plaintiff. The plaintiff sued, based in pertinent part on a theory that the defendant was equitably estopped from denying the plaintiff the position in question. We stated:
 "In this cause, it is undisputed that no representations and/or promises whatsoever were made to Bates regarding the term, duration or length of employment. Thus, although equitable estoppel might transform an otherwise nonbinding agreement into a legally binding contract, this Court has held that the principle of promissory or equitable estoppel cannot be utilized to create primary contractual liability. . . ."
Id. at 905.
Applying the foregoing principles to the present case, we find it evident that Burrell cannot create by promissory estoppel a primary contractual liability. Although, as indicated, promissory estoppel may render a nonbinding agreement binding, it cannot create the agreement; there must be an underlying promise in such an instance. The record indicates that no representation was made to Burrell as to cause of termination, except that found in his employee handbook, which states that he could be terminated with orwithout cause.
Burrell was obviously an at-will employee, see Scott v.Lane, 409 So.2d 791 (Ala. 1982). He could, therefore, be terminated without cause. Bates, 418 So.2d at 905.
In regard to Burrell's fraud claim against the hospital and the other nine defendants as representatives of the hospital, it is clear, here too, that Burrell could not recover. InSalter v. Alfa Ins. Co., 561 So.2d 1050 (Ala. 1990), this Court held that the showing of a loss of employment is legally inadequate to show the element of damage in a fraud claim by an at-will employee against his or her employer. We reasoned that because such an employee is terminable at will, even for a malicious reason, there can be no legally compensable injury resulting from the employer's terminating the employment. Id. at 1054.
Finally, we note that Burrell does not address any theory on which he could recover against the nine defendants sued in their individual capacities. As to the fraud claim, he states only that there was a genuine issue of material fact as to whether "the defendants" represented to him that he was to perform certain private work with hospital equipment or material on hospital time. Yet, it affirmatively appears from the record that the nine defendants concede that they did. In any event, this is not the relevant inquiry. Specifically, as Burrell acknowledges, he was terminated because of a failure toreport such services for hospital billing. Thus, the pertinent question is whether these nine defendants, as individuals, misrepresented to Burrell that he was not to report some or all of his costs and labor for such work. Burrell does not address this question on appeal. Given the foregoing, we do not address Burrell's claims against the nine defendants as individuals. See Bogle v. Scheer,512 So.2d 1336 (Ala. 1987) (discussing the waiver of issues on appeal).
In affirming the judgment of the trial court, we do not imply that we condone, in any respect, behavior by these defendants that may have been imprudent and unjustified in terms of social conduct. Here, *Page 197 
there is evidence to support Burrell's contention that the hospital acted harshly. There was evidence that Burrell was labelled a thief — an allegation of theft is a very serious allegation — although it appears from the record that the questioned behavior related to Burrell's trying to meet what he perceived, perhaps reasonably so, as a demand of his job. The record in no way indicates that Burrell was otherwise motivated. However, this state has a history of strict adherence to the employee at-will doctrine, which, as indicated, provides that a contract of employment "at will" is terminable at the discretion of either the employer or the employee. It may be terminated, for example, for no reason or even for a wrong reason. Salter, 561 So.2d at 1052.
The defendants made a prima facie showing that there was no genuine issue of material fact. The plaintiff did not rebut that showing. See Rule 56, A.R.Civ.P.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] Howard Tyra is not a party to this lawsuit.
[2] The record does not reveal that any of those persons complained about billing being too low. There is evidence that a key hospital staff member had complained that the cost of services was too high.
[3] The only representation of any sort indicated by the record in regard to cause for termination is found in Burrell's employee handbook, which states that he may be terminated with or without cause.