Glen Alan Gabrielson appeals from a summary judgment entered in favor of Healthcorp of Eufaula, Inc., on conversion and breach of contract claims and in favor of National Healthcare, Inc., on a fraud claim. We affirm.
On August 19, 1985, Gabrielson entered into a contract with National Healthcare, Inc. During the negotiations, Joe Gribbin, the administrator of Lakeview Community Hospital, told Gabrielson that the hospital, operated by National Healthcare, was a full service hospital providing general services, including obstetrics and pediatrics, that it was well supported by the community, and that it enjoyed a 50% to 60% occupancy rating. Under the terms of the contract, Gabrielson was to relocate from Madison, Iowa, to Eufaula, Alabama, to practice medicine. The contract terms were set for a one-year initial period and provided for the following: the payment of professional fees; an income guaranty; the payment of relocation expenses; leave time for vacation and continuing education requirements; office personnel; an agreement that Gabrielson would be licensed to practice in Alabama and would comply with the laws of the State of Alabama and with the Standards of the Joint Commission on Accreditation of Hospitals; insurance; *Page 413 
repayment of monies paid to Gabrielson in the event he ceased to practice medicine in Eufaula; that Lakeview Community Hospital would be the hospital of preference in Gabrielson's practice; that Gabrielson was to operate as an independent contractor and not as an employee of Lakeview Community Hospital; and agreed-upon access to medical records in accordance with § 952 of the Omnibus Reconciliation Act.
Gabrielson opened his medical practice in January 1986, in Eufaula. Immediately upon his arrival in Eufaula, he was informed by Gribbin that the staff pediatrician had resigned. A month and a half after his arrival, he learned that the obstetrics services at the hospital were being discontinued because the staff obstetricians were resigning.
On April 24, 1986, National Healthcare and Gabrielson entered into an addendum to the 1985 contract. Under the terms of the agreement, National Healthcare lent Gabrielson $25,000 in order for him to purchase the medical assets of a deceased physician's practice, and National Healthcare was to purchase the deceased physician's medical records for $25,000. Gabrielson signed a promissory note for the $25,000. The addendum also required Gabrielson to store and maintain a log of the whereabouts of the medical records, and to return the records to National Healthcare if Gabrielson discontinued his medical practice in Eufaula. Gabrielson made a lump sum payment of $2,083.35 on the promissory note for the months of January through May 1987, and he made additional payments through April 1, 1988. On July 1, 1987, National Healthcare, Inc., sold Lakeview Community Hospital to Healthcorp of Eufaula, Inc. As a part of the transaction, the note from Gabrielson to National Healthcare was assigned to Healthcorp.
On March 29, 1989, Gabrielson, at his request, was placed on courtesy staff at Lakeview Community Hospital, and shortly thereafter he closed his practice in Eufaula. He opened a new practice in Dothan in July 1989. In November 1989, Steve Arnold, the new administrator of Lakeview Community Hospital, requested that Gabrielson return the medical records to Healthcorp, as provided by the 1986 addendum. Gabrielson did not return them before leaving Eufaula in 1989, but placed them on the third floor of the building that housed his office. Gabrielson and Arnold exchanged letters concerning the return of the records; however, they were never returned to Healthcorp.
On September 7, 1990, Healthcorp sued Gabrielson, alleging conversion of the medical records and breach of contract. On June 19, 1991, Gabrielson answered and counter-claimed, alleging fraudulent misrepresentation on the part of Healthcorp. On the same day, Gabrielson filed a third-party complaint against National Healthcare, alleging that it had made certain misrepresentations during the 1985 and 1986 contract negotiations. National Healthcare moved to dismiss on the ground that the fraudulent misrepresentation claim was barred by the applicable statute of limitations; Healthcorp moved to dismiss the counterclaim on the same ground. Neither motion to dismiss was ruled on by the trial court.
National Healthcare and Healthcorp filed separate motions for summary judgment based on the pleadings, the discovery, and the deposition of Alan Gabrielson. After a hearing, the court entered a summary judgment in favor of National Healthcare and Healthcorp. The judgment awarded Healthcorp $10,000 in damages on the conversion claim and $33,720.62 on the breach of contract claim. The judgment held in favor of Healthcorp and National Healthcare on the counterclaim and the third-party complaint, respectively, on the ground that those claims were barred by the statute of limitations.
A summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; King v.Breen, 560 So.2d 186 (Ala. 1990). In determining whether a summary judgment was properly entered, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party.Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256
(Ala. 1991). In determining the existence or absence of a genuine issue of material fact, *Page 414 
this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. Broadmoor Realty, Inc. v. First NationwideBank, 568 So.2d 779 (Ala. 1990). However, this Court's reasoning is not limited to that applied by the trial court.Hill v. Talladega College, 502 So.2d 735 (Ala. 1987).
Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden of going forward with evidence demonstrating the existence of a genuine issue of material fact shifts to the nonmovant.Grider v. Grider, 555 So.2d 104 (Ala. 1989). Because this action was filed after June 11, 1987, the nonmovant must meet this burden by "substantial evidence." Ala. Code 1975, §12-21-12; Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989); § 12-21-12(d).
 CONVERSION
Gabrielson argues that Healthcorp was not entitled to a summary judgment on its conversion claim because, he says, he demonstrated that he had rightful possession of the medical records and Healthcorp knew that the records were being stored in his office in Eufaula. However, we conclude that the evidence conclusively shows that Gabrielson had no right to possession of the medical records.
This Court stated in Wilder v. Charles Bell Pontiac-Buick,Cadillac-GMC, Inc., 565 So.2d 205, 206 (Ala. 1990):
 "To maintain an action for conversion, a plaintiff must establish that the defendant converted specific personal property to his own use and beneficial enjoyment, or that the defendant destroyed or exercised dominion over property to which, at the time of the conversion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which he was entitled to immediate possession. A.C. Rent-A-Car, Inc. v. American Nat'l Bank Trust Co. of Mobile, 339 F. Supp. 506
([S.D.] Ala. 1972), aff'd, 477 F.2d 564 ([5th Cir.] 1973). See, also, Yarbrough v. Williams, 533 So.2d 565 (Ala. 1988); Allstate Enterprises, Inc. v. Alexander, 484 So.2d 375 (Ala. 1985); and Ott v. Fox, 362 So.2d 836 (Ala. 1978)."
Under the pertinent provision of the 1986 addendum, Gabrielson was to return the medical records to Lakeview Community Hospital immediately upon the discontinuation of his active practice in Eufaula. He was to also keep a log concerning the whereabouts of the medical records. The record does not reflect why the records were not returned to Healthcorp before Gabrielson moved to Dothan. The record does show, however, that Gabrielson and Arnold exchanged several letters concerning the return of the records. According to the correspondence, the records were placed on the third floor of the building that housed Gabrielson's office; the floor was structurally unsafe. Further, while Gabrielson did agree to provide Healthcorp access to the records, he refused to do so without being released from liability for any injuries that may have occurred during Healthcorp's attempt to retrieve the records from the building.
 "There is no doubt that an absolute or unqualified refusal to surrender possession of personal property to one entitled thereto constitutes a conversion. A limited or qualified refusal to surrender the property is not per se a conversion. Bolling v. Kirby, 90 Ala. 215, 7 So. 914 [(1890)]. But the refusal must be a reasonable qualification or requirement and stated in good faith."
Scott Paper Co. v. Novay Cherry Barge Service, Inc.,48 Ala. App. 368, 370, 265 So.2d 150, 153 (Ala.Civ.App. 1972). While Gabrielson's refusal to return the records was not unequivocal, it was unreasonable under the circumstances of this case. Healthcorp sufficiently demonstrated, as provided by the terms of the agreement, that Gabrielson exercised control over property that was legally Healthcorp's; therefore, the summary judgment was proper as to conversion claims.
 BREACH OF CONTRACT
Gabrielson also argues that the trial court erred by entering the summary judgment in *Page 415 
favor of Healthcorp on the breach of contract claim. We conclude that the trial court did not err.
This Court stated in P S Business, Inc. v. South CentralBell Telephone Co., 466 So.2d 928, 931-32 (Ala. 1985):
 "Summary judgment is appropriate in a breach of contract action where the contract is unambiguous and the facts undisputed. In Food Service Distributors, Inc. v. Barber, 429 So.2d 1025, 1028
(Ala. 1983), the Court stated:
 " 'The decision whether a contract provision is or is not ambiguous is a question of law for the trial court. . . . Food Service alleges that the ambiguity arises through its understanding of the termination provision. On the contrary, it is well settled that the words of a contract are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract itself. . . . If the court finds as a matter of law that a contract is unambiguous, then the construction and legal effect of that contract are a determination that may be appropriately made by summary judgment.' (Citations omitted.)"
In accordance with the 1986 addendum, Gabrielson borrowed $25,000 from National Healthcare and agreed to repay that amount with interest at 8%. National Healthcare assigned the debt to Healthcorp in July 1989. Gabrielson was indebted to Healthcorp, and his failure to pay the debt constituted a breach of contract. Therefore, the summary judgment was proper as to the contract claim.
 FRAUDULENT MISREPRESENTATION
The last argument raised by Gabrielson is that the fraudulent misrepresentation claims were not barred by the statute of limitations and, therefore, that the trial court erred in entering the summary judgment on those claims.
Ala. Code 1975, § 6-2-3, provides:
 "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
To support his fraud claim, Gabrielson contends that he was misled during the 1985 and 1986 contract negotiations into thinking that Lakeview Community Hospital was a full service hospital; that Lakeview was well supported by the community; that Lakeview maintained an occupancy level of 50% to 60%; and that National Healthcare intended to make certain renovations and improvements to the hospital. He argues, however, that he did not know of the fraud until November 1989. Assuming, without deciding, that National Healthcare made fraudulent misrepresentations to Gabrielson, the record indicates that Gabrielson knew the truth concerning these things before 1989. According to Gabrielson's deposition testimony, he was informed immediately upon his arrival in Eufaula in January 1986, by Gribbin, that the staff pediatrician had resigned. Gabrielson also testified that a month and a half after the pediatrician resigned, the staff obstetricians announced that they would close the obstetrics unit on March 30, 1986. In his affidavit, Gabrielson states that after he opened his practice and began to treat patients, he learned that the patients were not willing to be admitted to Lakeview Community Hospital because they thought it provided poor services. Furthermore, it is obvious that Gabrielson should have learned of the hospital's occupancy level and of the improvements, or lack of improvements, to the hospital earlier than 1989, inasmuch as he began work at the hospital in 1986. Thus, the fraudulent misrepresentation claims were barred by the statute of limitations, and the summary judgment was proper as to those claims.
Based on the foregoing, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur. *Page 416