764 So.2d 526 (1999)
Daniel J. SHERIDAN et al.
v.
BOARD OF WATER AND SEWER COMMISSIONERS OF the CITY OF PRICHARD.
1971258.
Supreme Court of Alabama.
September 17, 1999.
Rehearing Denied February 18, 2000.
John W. Parker and Herndon Inge III, Mobile, for appellants.
Donald F. Pierce and J. Robert Turnipseed of Pierce, Ledyard, Latta & Wasden, P.C., Mobile, for appellee.

On Application for Rehearing
SEE, Justice.
The opinion of January 8, 1999, is withdrawn and the following is substituted therefor.
Daniel J. Sheridan, Geraldine Washam, Lamar Washam, Clifton Washam, Fancy Pettway, and Darrin Pettway (the "residents") sued the Board of Water and Sewer Commissioners of the City of Prichard (the "Board") and the City of Prichard (the "City"), alleging, among other things, that the Board, on 19 separate occasions after March 12, 1997, had negligently or wantonly allowed raw sewage to back up into *527 their homes.[1] The Board and the City moved for a summary judgment. The Mobile Circuit Court entered a summary judgment in favor of the Board and the City, and the residents appealed the summary judgment as it relates to the Board. Because we hold that the residents released the Board from liability for the damages asserted in their complaints, we affirm.

I.
In June 1996, the residents sued the Board and the City, alleging that the Board and the City had negligently or wantonly allowed raw sewage to back up into their homes on occasions prior to, and on, August 30, 1996.[2] In June 1997, the residents settled their claims. The settlement included a release that provides in pertinent part:
"Daniel J. Sheridan, Geraldine Blount Washam, Lamar Washam, Clifton Washam, Fancy Pettway and Darrin Pettway... [have] released and discharged THE BOARD OF WATER & SEWER COMMISSIONERS OF THE CITY OF PRICHARD ... from any and all actions... on account of ... any and all known and unknown, present or future, anticipated or unanticipated damages resulting or to result from the alleged trespass, nuisance, and negligent design, approval, adoption, maintenance and construction of the storm water drainage system and the sanitary sewage system... from the beginning of time until January, 1997 ... and from any and all other claims ... arising out of ... allegations or claims made in that certain case ... styled as, `Daniel J. Sheridan, et al., Plaintiffs, vs. City of Prichard, et al., Defendants, Case Number: CV-96-1957.'"
In August 1997, the residents again sued the Board and the City, alleging, among other things, that the Board, on 19 separate occasions after March 12, 1997, had negligently or wantonly allowed raw sewage to back up into their homes. The Board and the City moved for a summary judgment, submitting in support of their motion a copy of the June 1997 release. The Board also submitted documents evidencing an action brought by the attorney general's office in 1995 against the Board alleging violations of the Alabama Water Pollution Act and evidencing the subsequent settlement of that litigation. The trial court entered a summary judgment in favor of the Board and the City, and the residents appealed from that summary judgment as it relates to the Board.

II.
A summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. See Rule 56(c), Ala. R. Civ. P.; Tripp v. Humana, Inc., 474 So.2d 88 (Ala.1985). "Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of material fact.... [T]he nonmovant must meet this burden by `substantial evidence.'" Chatham v. CSX Transp., Inc., 613 So.2d 341, 343 (Ala. 1993). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. *528 Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The residents contend that the summary judgment was inappropriate, arguing that the June 1997 release-of-claims document they signed as a result of the settlement of previous litigation with the Board did not prevent them from maintaining the present action. In Wayne J. Griffin Electric, Inc. v. Dunn Construction Co., 622 So.2d 314, 317 (Ala.1993), this Court stated:
"[A]bsent fraud, a release, supported by valuable consideration and unambiguous in meaning, will be given effect according to the intention of the parties from what appears in the four corners of the document itself; and parol evidence is not admissible to impeach or vary its terms."
Therefore, to address the residents' contention, we must examine the terms of the release. The release purported to discharge the Board from "any and all known and unknown, present or future, anticipated or unanticipated damages resulting or to result from the alleged trespass, nuisance, and negligent design, approval, adoption, maintenance and construction of the storm water drainage system and the sanitary sewage system ... from the beginning of time until January, 1997." (Emphasis added.) Accordingly, to the extent futurepost-January 1997damage "result[s] from the [pre-February 1997]... negligent design, ... maintenance and construction of the" storm water and sewerage system, the release relieves the Board of liability.
The residents claim that they are seeking compensation for damage arising from negligent acts of the Board occurring after January 1997. On appeal, the residents allege two types of post-January 1997 acts by the Board: First, the residents assert that after January 1997 "each and every sewage overflow and/or sewage back up which causes damage to these [residents'] property creates a separate and additional cause of action, since each cause of action is created when the damage occurs." Appellants' Brief p. 14.[3] Second, the residents assert that after January 1997 the Board undertook "to test the sanitary sewage collection system, through smoke tests and flow monitoring." Appellants' Reply Brief p. 5.
Whether these acts caused "future damage" covered by the release or, instead, gave rise to distinct proximate causes of damage not covered by the release must be determined in the context of the legal rules governing the liability of governmental entities, such as the Board. For many years, this Court applied the judicial doctrine of governmental immunity, under which municipalities and counties were not subject to legal liability in a civil action. See Jackson v. City of Florence, 294 Ala. 592, 594, 320 So.2d 68, 69 (1975) (citing Dargan v. Mayor, etc. of Mobile, 31 Ala. 469, 70 Am. Dec. 505 (1858)). In 1975, this Court abrogated the judicial doctrine of governmental immunity for municipalities and counties, on the basis of statutes that allowed municipalities, counties, and their instrumentalities to "sue and be sued." Jackson, 294 Ala. at 595-96, 320 So.2d at 70-71; Lorence v. Hospital Bd. of Morgan County, 294 Ala. 614, 617, 320 So.2d 631, 633 (1975).
In 1977, the Legislature enacted Ala. Code 1975, § 11-93-2, to limit the civil liability of governmental entities. Section 11-93-2 states in pertinent part:
"Recovery of damages under any judgment against a governmental entity[[4]] *529 shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth."
(Emphasis added.) The contractual release through which the Board and the residents agreed to settle the Board's liability should be interpreted consistently with § 11-93-2, which governs the extent of the Board's liability and provides a condition on the ability of the Board to enter into a settlement agreement. See Coaker v. Washington County Bd. of Educ., 646 So.2d 38, 41 (Ala.Civ.App.1993) ("Once entered into, a settlement agreement is as binding on the parties as any other contract."); Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala.1993) (interpreting a release using contract law); Barber Pure Milk Co. v. Alabama State Milk Control Bd., 275 Ala. 489, 494, 156 So.2d 351, 355 (1963) ("`[E]very contract is made with reference to existing law and every law affecting the contract is read into and becomes a part of the contract when made.'") (quoting Bush v. Greer, 235 Ala. 56, 58, 177 So. 341, 341 (1937)); see generally Board of School Comm'rs of Mobile County v. Hahn, 246 Ala. 662, 22 So.2d 91 (1945) (using statutes governing teacher tenure to interpret contracts between school boards and teachers).
This Court has previously addressed the application of § 11-93-2 to claims against the Board arising from sewer overflows, stating:
"`[A]s long as the injuries stem from one proximate cause there is a single occurrence.' The `occurrence' that triggered liability in this case was the overall failure of the Board to remedy the problems stemming from its sewage system, and, although there were numerous incidents of sewage overflow, the failure of the Board to remedy the overflow was a `single occurrence' within the meaning of § 11-93-2."
Carson v. City of Prichard, 709 So.2d 1199, 1205 (Ala.1998) (quoting United States Fire Ins. Co. v. Safeco Ins. Co., 444 So.2d 844, 846 (Ala.1983)) (emphasis added) (citations omitted). Thus, the release limits the liability of the Board with respect to all damage proximately caused by the single occurrence of the Board's failure to repair the sewerage system, even if several overflows arise from that failure to repair.
The two post-January 1997 acts of the Board alleged by the plaintiffs clearly relate to a single proximate cause, the Board's failure to repair the sewerage system. First, the successive overflows are part of the same pre-February 1997 occurrence covered by the release. See Carson, 709 So.2d at 1205 ("[A]lthough there were numerous incidents of sewage overflow, the failure of the Board to remedy the overflow was a `single occurrence' within the meaning of § 11-93-2."). Second, the post-January 1997 testing of the sewerage system, even if negligently performed, would not constitute a separate and distinct proximate cause of any damage. Instead, the testing was, at most, an ineffective step toward repairing the problem with the sewerage system that existed before the release was signed. Because the residents fail to allege a distinct post-January 1997 proximate cause, the damage they allege is "future damage" stemming from a pre-February 1997 cause and, thus, is expressly waived by the release.

III.
The residents executed a valid release discharging the Board from present and future damage resulting or to result from the Board's alleged pre-February 1997 negligent design, construction, and maintenance of the sanitary sewerage system of the City of Prichard. That release encompassed the claims brought by the residents in the present case. Therefore, the summary *530 judgment in favor of the Board is affirmed.
APPLICATION FOR REHEARING GRANTED; OPINION OF JANUARY 8, 1999, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, and BROWN, JJ., concur.
LYONS and JOHNSTONE, JJ., dissent.
LYONS, Justice (dissenting).
I respectfully dissent. I would reverse the summary judgment in favor of the Board on the basis of the scope of the release signed by the plaintiffs in June 1997. The plaintiffs have released the Board from "any and all known and unknown, present or future, anticipated or unanticipated damages resulting or to result from the alleged trespass, nuisance, and negligent design, approval, adoption, maintenance and construction of the storm water drainage system and the sanitary sewage system ... from the beginning of time until January, 1997." (Emphasis added.) The Board argues that since January 1997 it has taken no action that would constitute new wrongful acts on which the plaintiffs can base their cause of action, and that the instances of sewage backup into the homes of the plaintiffs that are alleged in their most recent complaint are claims for future damage that specifically were covered by the release executed in June 1997. The plaintiffs contend, however, that new independent wrongful acts have occurred since January 1997 that are not covered by the release.
Although I think that the allegations in the plaintiffs' complaint could be more specific or distinct, I believe those allegations are sufficient to impose upon the Board, as the party moving for a summary judgment, the burden of showing that no acts occurred after January 1997 that could give rise to the allegations in the complaint. A defendant moving for a summary judgment must refute by competent evidence any and all allegations of the plaintiffs' complaint and thereby establish that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. If the movant does not meet that burden, it is not entitled to a summary judgment. Sheetz, Aiken & Aiken, Inc. v. Louverdrape, Inc., 514 So.2d 797, 802 (Ala.1987).
On application for rehearing, the Board argues that it did present evidence indicating that it had not taken any action upon which any new claim could be based. As evidentiary support for its argument, the Board refers this Court to an affidavit it submitted from Roy A. King, who stated that he was a "public service supervisor" for the Board and had been employed by the Board for over 30 years. In that affidavit, King states (a) the location of the plaintiffs' property in relation to the sewerage system, (b) that the Board has begun a substantial amount of smoke testing on certain sewer lines but has not begun testing or monitoring the plaintiffs' property, and (c) that the plaintiffs' property will be tested for leaks and that any problems found will be corrected. It does not go further and negate the occurrence of new independent wrongful acts. I note that in a table of contents prepared by the Board listing the exhibits filed in support of its motion for summary judgment, the King affidavit is listed as follows: "Affidavit from Roy A. King, concerning the inclusion of the plaintiffs' properties as a part of the Consent Decree [entered into between the Board and the Alabama Department of Environmental Management]." Obviously, the affidavit was not offered for the purpose for which the Board now attempts to use it. I cannot conclude that King's testimony is sufficient to carry the Board's evidentiary burden. Because the Board did not meet the burden imposed on it as the party moving for the summary judgment, I would reverse the judgment and remand the cause for further proceedings.
JOHNSTONE, J., concurs.
NOTES
[1] This is the second case to come before this Court, with different plaintiffs, stemming from damage caused as a result of the recurrent backup of water and raw sewage from the sewerage and storm water drainage system maintained and operated by the Board. See Carson v. City of Prichard 709 So.2d 1199 (Ala.1998). A third case involving that same problem is also being decided today. See Williams v. Board of Water & Sewer Commissioners of the City of Prichard, 763 So.2d 938 (Ala.1999).
[2] The Board is responsible for designing, constructing, and maintaining the sewerage system of the City of Prichard.
[3] We note that the residents' postrelease complaint is almost a verbatim reproduction of their prerelease complaint. The postrelease complaint merely changes the dates of the floodings of which the residents complain.
[4] Ala.Code 1975, § 11-93-1, defines "governmental entity" to include: "Any incorporated municipality, any county and any department, agency, board or commission of any municipality or county, municipal or county public corporations and any such instrumentality or instrumentalities acting jointly." (Emphasis added.) The residents do not contest that the Board falls within this definition.