# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1947

_____

Brian Olander,                                    *
                                                  *
            Plaintiff-Appellant,                  *
                                                  *    Appeal from the United States
    v.                                            *    District Court for the
                                                  *    District of North Dakota.
State Farm Mutual Automobile                      *
Insurance Company; State Farm Life                *
Insurance Company; State Farm Fire                *
& Casualty Insurance Company; State               *
Farm General Insurance Company,                   *
                                                  *
            Defendants-Appellees.                 *

_____

Submitted:  November 14, 2001

Filed: January 25, 2002

_____

Before LOKEN, LAY, and HEANEY, Circuit Judges.

_____

LAY, Circuit Judge.

This case presents the question of whether, under North Dakota law, parol evidence is permitted to interpret the termination clause of an insurance agency agreement. The district court granted summary judgment in favor of the defendant insurance companies (collectively, "State Farm") and denied plaintiff Brian Olander's motion to set aside the judgment pursuant to Fed. R. Civ. P. 60(b). Because we hold

there are questions of fact yet to be resolved, we reverse the district court's grant of summary judgment.

## I. Background

In 1979, Brian Olander became a trainee agent for State Farm and entered into an agency agreement in 1981. By the terms of the agreement, Olander was an independent contractor and agent authorized to represent State Farm in Mandan, North Dakota. The relationship continued satisfactorily for seventeen years. In August 1996, Olander was charged with murder after a violent altercation with his neighbor. Shortly thereafter, State Farm offered Olander an unpaid leave of absence until the criminal charges were resolved. Olander refused and State Farm terminated the agency contract. As a result, the North Dakota Insurance Department suspended his license. State Farm subsequently seized Olander's business records, computers, and other policyholder information. His policies were assigned to other agents in the area.

The murder trial commenced in April 1997. On May 2, 1997, the jury returned a verdict finding Olander guilty of manslaughter and acquitting him of murder. He was sentenced to ten years in the state penitentiary. In March 1998, the North Dakota Supreme Court reversed Olander's conviction because of instructional error on the issue of self-defense. In a second trial in 1998, Olander was acquitted. Nonetheless, without an insurance company sponsor, Olander cannot be licensed as an insurance agent.

In 1999, Olander instituted this suit against State Farm alleging (1) termination of his agency agreement constituted a breach of contract, (2) State Farm tortuously interfered with the business relationships he had developed with his clients, and (3) State Farm was unjustly enriched by his termination. State Farm moved for summary judgment on all claims. The magistrate judge issued his Report and Recommendation

on February 7, 2001, concluding that State Farm's motion should be granted. After considering the parties' arguments in opposition to and support of the Report and Recommendation, the district court adopted the magistrate judge's report in its entirety on February 28, 2001. Olander then filed a motion to set aside the judgment pursuant to Fed. R. Civ. P. 60(b) based upon newly discovered evidence and failure of the defendants to make disclosures required by discovery. The district court denied plaintiff's motion, finding his newly discovered evidence to be cumulative of the parol evidence already submitted to the court and his charges of misconduct regarding defendants' disclosures unsubstantiated. Olander appeals the district court's summary judgment ruling on his breach of contract claim and its denial of his Rule 60(b) motion. We reverse.

## II. Discussion

Olander claims the district court erred by adopting the magistrate judge's report and granting summary judgment in favor of State Farm on the breach of contract action. He argues the agreement was ambiguous as to whether the contract could be terminated "at will" or whether termination required "good cause." The district court concluded the relevant terms of the agreement were unambiguous and created a contract terminable at will. Because the contract was unambiguous, under North Dakota law, Olander was unable to present parol evidence to support his understanding of the agreement. Des Lacs Valley Land Corp. v. Herzig, 621 N.W.2d 860, 862 (N.D. 2001) (explaining that parol evidence is not admissible to contradict the unambiguous language of a written contract). Thus, there was no issue of material fact, and summary judgment was granted in favor of defendants. We review the grant of summary judgment de novo, viewing any evidence in the light most favorable to the party opposing the motion. In re Craig, 144 F.3d 593, 595 (8th Cir. 1998).

Under North Dakota law, parol evidence is not admissible to vary the terms of a written contract.[1]  Des Lacs, 621 N.W.2d at 862.  However, a court may accept extrinsic evidence if the contract language is "vague or uncertain . . . to explain such terms and explain the true meaning of them."  Smith v. Michael Kurtz Constr. Co., 232 N.W.2d 35, 39 (N.D. 1975) (quoting Gilbert Mfg. Co. v. Bryan, 166 N.W. 805, 808 (N.D. 1918)).  The North Dakota Supreme Court has given a succinct summary of the law in this area:

> The construction of a written contract to determine its legal effect is generally a question of law.  Pamida, Inc. v. Meide, 526 N.W.2d 487, 490 (N.D. 1995).  A court must interpret a contract to give effect to the mutual intention of the parties as it existed at the time of contracting.  N.D.C.C. § 9-07-03; Pamida, at 490.  In interpreting a written contract, a court should ascertain the intention of the parties from the writing alone if possible.  N.D.C.C. § 9-07-04; Pamida, at 490.  A written agreement supersedes any prior oral agreements or negotiations between the parties in the absence of any ambiguity.  Norwest Bank North Dakota, Nat'l Ass'n v. Christianson, 494 N.W.2d 165, 168 (N.D. 1992).

---

[1] Olander relies heavily upon a series of Ninth Circuit cases interpreting similar provisions under California state law.  E.g., Sandberg v. State Farm Mutual Auto. Ins. Co., 182 F.3d 927 (9th Cir. 1999) (unpublished opinion); Jack Rowe Assocs., Inc. v. Fisher Corp., 833 F.2d 177 (9th Cir. 1987); Sherman v. Mut. Benefit Life Ins. Co., 633 F.2d 782 (9th Cir. 1980).  He goes so far as to assert that Sandberg collaterally estops State Farm from relitigating the "termination at will" issue. However, Olander waived his collateral estoppel claim by failing to raise it in the district court.  Furthermore, California law on the subject of parol evidence in contract disputes is substantially different from the law of North Dakota.  Specifically, California allows the evaluation of extrinsic evidence even if the contract is not facially ambiguous.  See Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 442 P.2d 641, 644 (Cal. 1968).  North Dakota law would not allow this.  See Garofalo v. St. Joseph's Hosp., 615 N.W.2d 160, 162 (N.D. 2000); see also N.D.C.C. § 9-07-04. Thus, the Ninth Circuit cases cited by Olander are of little use in resolving the present dispute.

-4-

A contract is ambiguous when rational arguments can be made for different positions about its meaning. Felco, Inc. v. Doug's North Hill Bottle Shop, Inc., 1998 ND 111, P12, 579 N.W.2d 576. Whether or not a contract is ambiguous is a question of law. Moen v. Meidinger, 547 N.W.2d 544, 547 (N.D. 1996). Determining an ambiguity exists is merely the starting point in a search for the parties' intent because an ambiguity creates questions of fact to be resolved using extrinsic evidence. Id. When a contract is ambiguous, the terms of the contract and parties' intent become questions of fact. Wachter Development, L.L.C. v. Gomek, 544 N.W.2d 127, 131 (N.D. 1996).

Kaler v. Kraemer, 603 N.W.2d 698, 702 (N.D. 1999).

We disagree with the district court's characterization of the relevant terms as "unambiguous." State Farm relies upon the following language within the insurance agreement to assert that the contract is unambiguous in instructing that the agency relationship with Olander was at all times terminable at will:

A.  This agreement will terminate upon your death. You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address. The date of termination shall be the date specified in the notice, but in the event no date is specified, the date of termination shall be the date of delivery if the notice is delivered, or the date of the postmark, if the notice is mailed. Either party can accelerate the date of termination specified by the other by giving written notice of termination in accordance with this paragraph.

This section, on its face, sets forth the procedure by which the parties to the agreement must give notice of termination. It says nothing as to whether the termination must be for cause or may be at will. Certainly, rational arguments can be made for different positions about its meaning. North Dakota's parol evidence rule recognizes this reality by allowing "proof of the existence of any separate oral stipulations or agreements as to matters on which a written contract is silent." Schue

v. Jacoby, 162 N.W.2d 377, 382 (N.D. 1968); see also Putnam v. Dickinson, 142 N.W.2d 111, 119 (N.D. 1966).

State Farm contends that Olander's argument from silence is merely an attempt to create an ambiguity where none exists. If this were Olander's only argument, State Farm might be correct. See Martin v. Equitable Life Assurance Soc'y of the United States, 553 F.2d 573, 574 (8th Cir. 1977); Ins. & Consulting Assocs., LLC v. ITT Hartford Ins. Group, 48 F.Supp.2d 1181, 1192 (W.D. Mo. 1999) (no ambiguity where the only argument presented was the absence of a provision allowing the agent to sue the insurance company if the insured chose to bypass the agent and deal directly with the insurer); Metro. Life Ins. Co. v. RJR Nabisco, Inc., 716 F.Supp. 1504, 1515 (S.D.N.Y. 1989) (holding the absence of a provision prohibiting or allowing leveraged buy-outs could not, by itself, create an ambiguity that can avoid the parol evidence rule given the relevant bond indentures at issue imposed no debt limitations); Lewis v. Finetex, Inc., 488 F.Supp. 12, 14 (D.S.C. 1977) (silence insufficient to overcome statutory presumption directly bearing on the issue); McMillin v. Great Southern Corp., 480 S.W.2d 152, 155 (Tenn. Ct. App. 1972) (option agreement's silence as to whether the optionee must be an employee or officer at the time of exercise did not create ambiguity allowing for the consideration of parol evidence); Patillo v. Equitable Life Assurance Soc'y, 502 N.W.2d 696, 699 (Mich. App. 1993); James H. Washington Ins. Agency v. Nationwide Mut. Ins. Co., 643 N.E.2d 143, 147 (Ohio App. 1993); but cf. Kaldi v. Farmers Ins. Exch., 21 P.3d 16, 18, 21 (Nev. 2001) (discussing, in addition to mere silence on termination, the termination review procedure). Thus, we have no disagreement with the dissent's explanation of the general rule that silence alone does not create an ambiguity.

Olander draws additional support from the terms of the agreement as a whole. The North Dakota Century Code instructs that when interpreting a contract, "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9-07-

06. It is also well-settled under North Dakota law that "[t]he intention of the parties to a contract must be gathered from the entire instrument, not from isolated clauses, and every clause, sentence, and provision should be given effect consistent with the main purpose of the contract." Nat'l Bank of Harvey, v. Int'l Harvester Co., 421 N.W.2d 799, 802 (N.D. 1988). In light of the absence of a provision directly indicating whether termination requires good cause, two other clauses of the agency agreement must be read as well.

Initially, paragraph B of section III, which immediately follows the provision at issue, entitles the agent to a review following termination of the agreement by State Farm.[2] While by no means foreclosing other interpretations, one rational explanation for the existence of the review procedure is to ensure that any termination was made for good cause, and not capriciously. Cf. Kaldi, 21 P.3d at 21 (finding the review procedure offers "the agent the opportunity to assert it is not in the company's best interest of the insurer to sever the agency relationship . . . ."). In addition, the preambulatory recitation, although not controlling, lends further support to the plaintiff's argument. See United States v. Tilley, 124 F.2d 850, 854 (8th Cir. 1941). Among a number of other provisions, it states: "The Companies and the Agent expect that by entering into this Agreement, and *by the full and faithful observance and performance of the obligations and responsibilities herein set forth*, *a mutually satisfactory relationship will be* established and *maintained*." (emphasis added). This language is far from dispositive. It is, however, additional textual support for plaintiff's argument located within the four corners of the document. It suggests that if the parties meet their contractual obligations, the relationship will continue. Such

---

[2]The provision reads:

B.     In the event we terminate this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Board of Directors of the Companies, as amended from time to time.

-7-

an interpretation is inconsistent with State Farm's assertion that the agreement unambiguously allows for termination regardless of the parties' performance.

State Farm contends that North Dakota law prohibits the use of parol evidence to vary the terms of a written contract where, as here, the parties agree that the contract contains the entire agreement. This argument is without merit. Putnam v. Dickinson held parol evidence was admissible where a deed was silent on a matter, the court indicated the parties did not intend the agreement "to be a complete and final statement of the whole of the transaction between them," and the extrinsic evidence was consistent with the terms of the agreement. Putnam, 142 N.W.2d at 119. However, the North Dakota Supreme Court has never held this to be the only circumstance where parol evidence is admissible in a contract dispute. For instance, in Jorgensen v. Crow, 466 N.W.2d 120 (N.D. 1991), the state supreme court held the trial court had erred in admitting parol evidence "that varied the purchase price of the contract for deed." Id. at 124. However, it found no error in the trial court's admitting "a prior oral agreement that the yearly payment due under the contract for deed would be satisfied by one season's use of the pasture because that testimony does not contradict a term of the written contract." Id. The court has explicitly stated that, when an ambiguity exists, "parol evidence is admissible to explain existing essential terms or to show the parties' intent." Bye v. Elvick, 336 N.W.2d 106, 111 (N.D. 1983). That is the situation we are presented with here. Whether or not the agent's agreement expressed the entire transaction between State Farm and Olander is of no consequence.

In the instant case, we are presented with a contractual provision that is silent on the subject of cause. Both parties offer plausible explanations for this silence and Olander has directed us to provisions within the agreement itself supporting his interpretation. Therefore, reasonable persons could rationally argue that the termination provision merely sets forth the procedure for giving notice of termination without specifying whether or not termination requires cause. "Because reasonable

people could make rational arguments in support of contrary positions . . . there was a genuine issue of material fact rendering summary judgment on this issue inappropriate." Pamida, Inc. v. Meide, 526 N.W.2d 487, 493 (N.D. 1995). In light of this conclusion, it is unnecessary to address Olander's claims regarding his Rule 60(b) motion.

Accordingly, the judgment of the district court is REVERSED and REMANDED.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. The insurance agency contract between State Farm and Brian Olander provided that, "You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address." The issue before us is whether this term made the contract unambiguously terminable at will.

In finding ambiguity, the court simply ignores the general principle that a personal services contract of indefinite duration may be terminated at will by either party. See 1 RICHARD LORD, WILLISTON ON CONTRACTS § 4.20, at 451 & n.7 (4th ed. 1990); Meredith v. John Deere Plow Co. of Moline, Illinois, 185 F.2d 481, 482 (8th Cir. 1950). North Dakota has codified that principle for contracts of employment. See N.D. CENT. CODE § 34-03-01.[3] And the Supreme Court of North Dakota has applied the principle to other types of personal services contracts. See Myra Foundation v. Harvey, 100 N.W.2d 435, 437 (N.D. 1960), followed in North Amer. Pump Corp. v. Clay Equip. Corp., 199 N.W.2d 888, 894 (N.D. 1972). Applying South Dakota law, which includes a statute virtually identical to § 34-03-

---

[3]"An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title."

01, we held in <u>Martin v. Equitable Life Assurance Society of the United States</u>, 553 F.2d 573, 574 (8th Cir. 1977), that an insurance agency contract having no fixed term was terminable at will by either party. That is the general rule. <u>See</u> 13 ERIC HOLMES, HOLMES' APPLEMAN ON INSURANCE 2D § 99.2 (1999).

The general rule makes all the difference in deciding this case. The court concludes the contract is ambiguous because "[i]t says nothing as to whether the termination must be for cause or may be at will." <u>Ante</u> p.5. But under the general rule, silence as to the duration of an agency relationship is an unambiguous declaration that the contract is terminable at will. In addition to our decision in <u>Martin</u>, numerous cases have held that an insurance agency contract of indefinite duration containing the precise language here at issue -- that the contract is terminable upon notice by either party -- is terminable at will as a matter of law. <u>See Kaldi v. Farmers Ins. Exch.</u>, 21 P.3d 16, 18, 20 (Nev. 2001); <u>Patillo v. Equitable Life Assurance Soc'y of the United States</u>, 502 N.W.2d 696, 699 (Mich. App. 1993); <u>James H. Washington Ins. Agency v. Nationwide Mut. Ins. Co.</u>, 643 N.E.2d 143, 147 (Ohio App. 1993). These cases also establish that provisions similar to the termination review procedure quoted in footnote 2 of the court's opinion do not render the termination-upon-notice provision ambiguous. As the court said in <u>Kaldi</u>, 21 P.3d at 21:

> The review board process gives the agent the opportunity to assert that it is not in the best interest of [the insurer] to sever the agency relationship. . . . Thus, even without a requirement of cause, the review board serves a viable purpose under the contract.

Significantly, every court but one that has interpreted the specific State Farm agreement here at issue has concluded that it is unambiguously terminable at will. <u>See Gardner v. State Farm Mut. Auto. Ins. Co.</u>, 2001 WL 399874 (Ala. Civ. App. 2001) (discussing the termination review procedure at *5); <u>Melnick v. State Farm</u>

-10-

Mut. Auto. Ins. Co., 749 P.2d 1105, 1110-11 (N.M.), cert. denied, 488 U.S. 822 (1988); Vitkauskas v. State Farm Mut. Auto. Ins. Co., 509 N.E.2d 1385, 1387 (Ill. App. Ct. 1987); Mooney v. State Farm Ins. Co., 344 F.Supp. 697, 699-700 (D.N.H. 1972) (discussing the termination review procedure).  The exception is the Ninth Circuit's unpublished opinion in Sandberg, which the court correctly concludes is irrelevant because California law allows the use of extrinsic evidence to determine if a contract is ambiguous.  Ante note 1.

The immediate impact of this decision may prove to be slight, because the ultimate fact-finder is likely to find either that the State Farm/Olander contract was terminable without cause, or that State Farm had good cause in protecting its policyholders and its reputation by removing a captive agent who was facing a criminal prosecution for homicide.  But contract law should be predictable, and this decision potentially disrupts the settled expectations of countless parties to this standard form State Farm agency contract in States other than California.  I therefore hope that the Supreme Court of North Dakota, if presented the opportunity, will squarely reject this distortion of North Dakota contract law.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-