JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Facility Services Systems, Inc. ("FSS") appeals from the judgment of the trial court that awarded defendant Thomas M. Vaiden summary judgment in FSS's action for breach of a non-compete provision of a nondisclosure and noncompetition agreement and a severance agreement. For the reasons set forth below, we affirm.
 {¶ 2} In December 2000, Vaiden accepted a position with FSS, a company which, at that time, was primarily involved with providing airport passenger screening personnel and security checkpoint equipment. Vaiden signed a nondisclosure and noncompetition agreement which provided in relevant part, as follows:
 {¶ 3} "For the period of two (2) years after termination of Employee's employment with the Company, with or without cause, Employee shall not own, manage, operate, be employed by, participate or be connected in any manner with the ownership, management or control of any business similar to the type of business in which the Company is engaged as of the date of such termination.
 {¶ 4} "* * *
 {¶ 5} "For the period of two (2) years after termination of Employee's employment with the Company, with or without cause, Employee shall not interfere with the relationship of the Company, and any of its customers, employees, agents, representatives or suppliers.
 {¶ 6} "* * *
 {¶ 7} "Employee acknowledges that, upon execution of this Agreement and solely by reason of his employment by the Company, Employee may come into possession of, have knowledge of, or contribute to the Confidential Information. * * * Employee shall neither directly nor indirectly cause or permit the exploitation, copying or summarizing of any of the Confidential Information, except in the performance of Employee's duties for the Company or as otherwise directed by the Company.
 {¶ 8} "* * *
 {¶ 9} "The restrictions and limitations * * * are reasonable as to scope and duration and are necessary to protect the Company's proprietary interest in its Confidential Information and to preserve for the Company, the competitive advantage derived from maintaining that information as secret."
 {¶ 10} During Vaiden's tenure with FSS, the company also acquired contracts to perform skycap services at three airports, and contracts for baggage and cargo handling at six airports.[1] The company also provided other services including baggage handling, aircraft handling and wheelchair services.
 {¶ 11} Following the terrorist attacks of September 11, 2001, the federal government assumed control over most passenger security operations, through the Transportation Safety Administration (TSA").
 {¶ 12} On November 1, 2002, FSS eliminated Vaiden's position and the parties entered into a severance agreement. Under this agreement, FSS agreed on a case-by-case basis to refrain from enforcing its rights under the nondisclosure and noncompetition agreement if, inter alia, Vaiden provided FSS with the name of his new employer and a description of the new employer's business.
 {¶ 13} In February 2004, Vaiden accepted a position with AvEx Flight Support ("AvEx") which involved the oversight of airport contracts for exterior aircraft cleaning. He was advised, however, that AvEx has three skycap service contracts in two cities, and had one contract for baggage and cargo handling. It is undisputed that Vaiden did not notify FSS of the identity of his new employer or the nature of its business.
 {¶ 14} On September 14, 2004, FSS filed this action for injunctive relief and damages alleging that Vaiden had violated both the nondisclosure and noncompetition agreement and the severance agreement.
 {¶ 15} Vaiden denied liability and moved for summary judgment. Vaiden asserted that the primary focus of FSS was to provide airlines with airport passenger screening personnel and security checkpoint equipment, and that the primary focus of AvEx is exterior aircraft cleaning, an area in which FSS was not involved during the time of his employment. Accordingly, Vaiden asserted that AvEx was not a "business similar to the type of business in which [FSS] was engaged," so he did not breach his noncompete agreement with FSS. Alternatively, he asserted that the provision was unenforceable. Vaiden also noted that there was no evidence that he breached the nondisclosure provision of the agreement. Finally, Vaiden asserted that FSS had suffered no damages.
 {¶ 16} In opposition, FSS acknowledged that its discovery efforts "revealed no evidence that Vaiden disclosed confidential information." FSS insisted, however, that Vaiden breached the noncompete provision because the "primary business of FSS and AvEx is providing services to airlines" and that AvEx is one of its "direct competitors." With regard to the severance agreement, FSS insists that it had the right to determine whether Vaiden had accepted employment with a similar business.
 {¶ 17} On July 22, 2005, the trial court awarded Vaiden summary judgment with regard to FSS's claim for breach of the nondisclosure and noncompetition agreement but denied the motion as to FSS's claims for breach of the Severance Agreement. On August 8, 2005, the court issued a nunc pro tunc order granting Vaiden summary judgment as to all claims. FSS now appeals and assigns two errors for our review.
 {¶ 18} FSS's first assignment of error states:
 {¶ 19} "The trial court erred when it issued its August 8, 2005, nunc pro tunc judgment entry modifying its July 22, 2005 entry."
 {¶ 20} Within this assignment of error FSS asserts that the trial court's nunc pro tunc order was issued in error since the court made a substantive change in its ruling and did not merely correct a clerical mistake.
 {¶ 21} A nunc pro tunc order is a vehicle used to correct an order previously issued which fails to reflect the trial court's true action. Collins v. Robinson, Montgomery App. No. 20954,2006-Ohio-407.
 {¶ 22} "It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. * * * It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors." State v. Evans, 161 Ohio App.3d 24,2005-Ohio-2337, 829 N.E.2d 336, citing State ex rel. Phillips v.Indus. Comm. (1927), 116 Ohio St. 261, 155 N.E. 798.
 {¶ 23} Nunc pro tunc entries properly limited to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide. Stateex rel. Mayer v. Henson, 97 Ohio St.3d 276, 2002-Ohio-6323,779 N.E.2d 223.
 {¶ 24} In this matter, the trial court awarded Vaiden partial summary judgment on July 22, 2005, then issued the second order which stated:
 {¶ 25} "Nunc pro tunc. Journal entry dated 7/22/05 which grants defendant partial summary judgment, book 3371 page 0735.Please note the clerk's office has committed a clerical error.
This court rules as follows. Defendant's motion for summary judgment, filed 7/13/05 is granted. Final. Court cost assessed to the plaintiff(s)." (Emphasis added).
 {¶ 26} Nothing has been provided to refute the court's note that a clerical error occurred. In any event, the court's actions did not prejudice either party. Following the initial ruling awarding partial summary judgment to Vaiden, the trial court retained jurisdiction over the remaining claim for breach of the severance agreement and could properly enter any lawful order as to that claim. The court would have been permitted to reconsider Vaiden's motion for summary judgment as to that claim. We recognize no procedural error in connection with the August 8, 2005 ruling. Accord Alexander v. Griffie (August 9, 1990), Cuyahoga App. No. 57366 (trial court issued nunc pro tunc order noting that earlier partial award of summary judgment to defendant was in error, where court intended to award defendant full summary judgment). Cf. Briggs v. Fedex Ground PackageSys., 157 Ohio App.3d 643, 2004-Ohio-3320, 813 N.E.2d 43 (trial court erred in entering nunc pro tunc order where court's earlier order disposed of the entire case and court was subsequently without jurisdiction); Menti v. Joy (October 20, 1994), Cuyahoga App. No. 65706 (same).
 {¶ 27} The first assignment of error is overruled.
 {¶ 28} FSS's second assignment of error states:
 {¶ 29} "The trial court erred when it granted Vaiden's motion for summary judgment in its entirety when genuine issues of material fact exist."
 {¶ 30} FSS next asserts that the noncompete provision of the employment agreement is enforceable, Vaiden breached this agreement by accepting employment with AvEx, which, it asserts, is a similar business, and that FSS is entitled to damages, including its attorney fees, as a result of the breach.
 {¶ 31} With regard to procedure, we note that we review the grant of summary judgment de novo using the same standards as the trial court. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.
 {¶ 32} A trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164, 1171.
 {¶ 33} The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment. Id., citing Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Vahila v. Hall, supra.
 {¶ 34} In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Civ.R. 56(E); Harless v. Willis Day WarehousingCo., supra. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact for trial. Vahila v. Hall,
supra.
 {¶ 35} If the party does not so respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Summary judgment, if appropriate, shall be entered against the non-moving party.Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
 {¶ 36} With regard to the substantive law, we note that the issue of whether a contract is enforceable is a question of law for the court to decide. Lovewell v. Physicians Ins. Co.
(1997), 79 Ohio St.3d 143, 679 N.E.2d 1119.
 {¶ 37} An agreement not to compete is enforceable only to the extent it (1) is necessary to protect the company's legitimate interest; (2) does not impose undue hardship on the employee; and (3) is not adverse to public interest. Rogers v. Runfola Associates, Inc. (1991), 57 Ohio St.3d 5, 565 N.E.2d 540.
 {¶ 38} The trial court may consider the following factors in determining if the agreement is reasonable:
 {¶ 39} "* * * geographic and temporal limits, if any; whether the employee represents the sole customer contact; whether the employee possesses confidential information or trade secrets; whether the clause seeks to restrain ordinary, rather than unfair, competition; whether the clause stifles the pre-existing skills of the employee or only those skills which were developed while working for the employer; the balance of the clause's detriment to employer and employee; whether the clause restricts the employee's sole means of support; and whether the restricted employment is merely incidental to the main employment."Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21, 25,325 N.E.2d 544.
 {¶ 40} It is the burden of the plaintiff to produce clear and convincing evidence as to each element of the test. H.R.Graphics v. Lake-Perry (January 30, 1997), Cuyahoga App. No. 70696.
 {¶ 41} In addition, a one-year time limitation has been repeatedly held to be a reasonable period of time for such agreements. See, e.g., Raimonde v. Van Vlerah, supra; Rogersv. Runfola Associates, Inc., supra; James H. Washington Ins.Agency v. Nationwide Mut. Ins. Co. (1993), 95 Ohio App.3d 577,589, 643 N.E.2d 143.
 {¶ 42} In this matter, the noncompete provision provided as follows:
 {¶ 43} "For the period of two (2) years after termination of Employee's employment with the Company, with or without cause, Employee shall not own, manage, operate, be employed by, participate or be connected in any manner with the ownership, management or control of any business similar to the type ofbusiness in which the Company is engaged as of the date of suchtermination."
 {¶ 44} Thus, if the evidence, viewed in a light most favorably to FSS, does not support the claim that Vaiden is employed by an entity which is engaged in a business that is the same as or similar to FSS's business then Vaiden is entitled to summary judgment. See Optimum Technology, Inc. v. Cafulcles
(Dec. 29, 1992), Franklin App. No. 92AP-587. Alternatively, Vaiden is entitled to summary judgment if the noncompete provision is unenforceable. Id.
 {¶ 45} In this matter, the record demonstrates that at the time Vaiden began working for FSS, the focus of FSS was primarily to provide security and security-related hardware and equipment to commercial aviation, and to provide a security-related product, such as "exit land technology". (Vaiden depo. at 19, 38; Weitzel depo. at 33). Over time, FSS looked to expand its business to other areas, and considered many ideas. They added skycap services in two contracts and added cargo screening in one area, but the bulk of its business was in preboard screening.
 {¶ 46} Vaiden was terminated after the TSA assumed responsibility for airport security. Vaiden avoided jobs which were in direct conflict with FSS and remained out of work for fourteen months. (Vaiden depo. at 66). He interviewed with AvEx, a company which focuses on the private sector and exterior aircraft cleaning for some major carriers. (Vaiden depo. at 77). According AvEx's founder and sole shareholder, Richard Castellano, 99% of the company's business is aircraft cleaning. Vaiden acknowledged, however that AvEx does interior cleaning and has skycap services in two cities and one ground services contract. (Vaiden 79-80). This work evolved out of the exterior cleaning work, however, and is not AvEx's core business. (Castellano depo. at 11, 16).
 {¶ 47} Most of AvEx's bids are for cleaning and ramp work but AvEx has not gotten any ramp contracts (Castellano 12, 15, 17-18). Castellano could recall no instance in which the company bid on ticket checker work but it does this work at Burlington, and Manchester for US Airways. (Castellano depo. at 19-20). AvEx also performs passenger services contracts at the Providence Rhode Island airport.
 {¶ 48} Vaiden was unaware of any instances in which the two companies bid against each other. (Vaiden depo. at 84) He was also unaware of FSS performing exterior cleaning. (Vaiden depo. at 85). Vaiden is not involved in the bid process. (Castellano 28).
 {¶ 49} Approximately one year prior to hiring Vaiden, FSS's president, Robert Weitzel, spoke to Castellano about purchasing AvEx and, at this time, Castellano learned that FSS was primarily involved with security and automated line systems, areas which AvEx had no plans to enter. (Castellano depo. at 28, 35).
 {¶ 50} Robert Weitzel testified that FSS provided preboard security screening, skycap services, wheelchair services, electric cart services, priority parcel services, security guard services, cargo security services, aircraft cleaning, ground handling. (Weitzel at 45-46). Many of its skycap contracts were obtained after Vaiden's termination, however. FSS has two "cabin appearance" or interior cleaning contracts. (Weitzel depo. at 54). One of these contracts was obtained after Vaiden left and one was obtained a few weeks before his termination. FSS does not perform private aircraft cleaning and has never had any contracts for exterior aircraft cleaning. (Weitzel depo. at 82-83). FSS bid against AvEx for exterior cleaning after Vaiden's termination. (Weitzel depo. at 71-72). Weitzel was unaware of any instance where FSS bid against AvEx for skycap services. (Weitzel depo. at 60), and was unaware of any instance where AvEx provided wheelchair services. (Weitzel depo. at 61). FSS bid against AvEx for ground handling services, however, in two instances when Vaiden was still employed by FSS.
 {¶ 51} Weitzel claimed that, while Vaiden was at FSS, he learned how to prepare a staffing schedule in relation to a flight schedule, but he conceded that Vaiden had knowledge of such procedures in connection with his prior work for Delta Airlines. (Weitzel depo. at 72). He also acknowledged that Vaiden was trained through the Air Transportation Association, a trade group that provides programs for members, (Weitzel depo. 75-76) and that FSS's client list was purchased commercially from McGraw-Hill (Weitzel depo. at 43).
 {¶ 52} Finally, Weitzel admitted that others at FSS who have access to confidential information or trade secrets have not signed a nondisclosure and noncompetition agreement and that the individuals who trained Vaiden have not signed such agreements. He also admitted that he was unaware of the financial impact of Vaiden's employment with AvEx. FSS presented no evidence of lost in profits.
 {¶ 53} From the foregoing, we find no genuine issues of material fact and we conclude that the trial court properly determined that Vaiden was entitled to judgment as a matter of law. With regard to the noncompete provision of the a nondisclosure and noncompetition agreement, the agreement exceeds what is necessary to protect the company's legitimate interest and imposes undue hardship on the employee. As an initial matter, there is no geographic limitation and, in our view, the two-year period is unreasonable. Accord Raimonde v. Van Vlerah, supra;Rogers v. Runfola Associates, Inc., supra. Vaiden was not the sole customer contact. Weitzel asserted that Vaiden had confidential information or trade secrets but he admitted that others with access to this information were not required to sign similar agreements and FSS conceded that "its discovery efforts to date have revealed no evidence that Vaiden disclosed confidential information." Brief in Opposition to Summary Judgment. Moreover, the noncompete provision seeks to restrain ordinary, rather than unfair, competition. If enforced, bar Vaiden from working in preboard security screening, skycap services, wheelchair services, electric cart services, priority parcel services, security guard services, cargo security services, aircraft cleaning, ground handling. (Weitzel depo. at 45-46). The restrictions are vast and far-reaching, and purport to bar employment in areas which were merely incidental to FSS's main line of work during the time of Vaiden's employment, and areas where FSS seeks to work but has not yet acquired contracts. In this connection, the provision also restricts Vaiden's sole means of support, given his skills and past experience in airport-related employment, including thirty-five years with Delta Airlines.
 {¶ 54} We also note that the trial court was not mandated to modify the provisions to render them enforceable. ProfessionalInvestigations and Consulting Agency, Inc. v. Kingsland (1990),69 Ohio App.3d 753, 760, 591 N.E.2d 1265. The trial court did not abuse its discretion by declining to modify the provision.
 {¶ 55} Finally, we conclude that the record does not demonstrate a genuine issue of material fact as to whether AvEx is a "business similar to the type of business in which the FSS is engaged as of the date of such termination" as AvEx focuses upon exterior aircraft cleaning, and performs extremely limited skycap services, and FSS did security, with skycap, baggage, cargo, ground services, and interior cleaning. Although there is tangential overlap, there is no evidence that the two companies are engaged in similar businesses.
 {¶ 56} With regard to the severance agreement, we note that Vaiden did not contact FSS and identify AvEx as his potential employer prior to accepting his position, in order for FSS to determine whether there would be a breach of the noncompete provision. However, there can be no cause of action for the breach of an agreement which is unenforceable as a matter of law. See Westco Group, Inc. v. City Mattress (August 15, 1991), Montgomery App. No. 12619. Accordingly, this claim fails.
 {¶ 57} The second assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., concurs.
 Gallagher, J., Concurs in Part and Dissents in Part (seeattached concurring and dissenting opinion).
[1] In the United States, there are a total of 565 certificated airports, or airports that accommodate aircrafts with seating for more than thirty (30) passengers.
 CONCURRING AND DISSENTING OPINION